FILED
United States Court of Appeals
Tenth Circuit

August 12, 2015

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

      Plaintiff - Appellee,

v.

ERIC MADRID,

      Defendant - Appellant.

No. 15-2075
(D.C. Nos. 1:11-CV-01135-LH-KBM and
1:08-CR-00683-LH-1)
(D.N.M.)

_____

**ORDER DENYING CERTIFICATE OF APPEALABILITY**[*]
_____

Before **KELLY**, **LUCERO**, and **McHUGH**, Circuit Judges.
_____

Eric Madrid seeks a certificate of appealability ("COA") to appeal the district

court's denial of his 28 U.S.C. § 2255 habeas motion. We deny a COA and dismiss

the appeal.

**I**

During an investigatory stop, officers discovered a rifle in the back seat of a

vehicle Madrid was driving. After the stop, Madrid moved to suppress evidence of

the rifle. The district court denied his motion to suppress. Subsequently, Madrid

pled guilty to being a felon in possession of a firearm in violation of 18 U.S.C.

_____

[*] This order is not binding precedent, except under the doctrines of law of the
case, res judicata, and collateral estoppel. It may be cited, however, for its
persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

§ 922(g)(1). Madrid now alleges that his trial counsel was ineffective for failing to further impeach the officers during the suppression hearing.

Although we thoroughly recounted the facts underlying Madrid's case in his direct appeal, United States v. Madrid, 713 F.3d 1251, 1254-55 (10th Cir. 2013), we provide further detail about the suppression hearing to clarify the basis of the case at bar. Madrid argued that probable cause to search his vehicle was absent because Officer Darrell Sanchez, who discovered the rifle, did so only after Lieutenant Chris Stoyell detained Madrid for twenty minutes outside the vehicle.

At the suppression hearing, Stoyell testified that he arrived at the apartment complex about a minute after being dispatched, stopped the vehicle Madrid was driving, pointed a spotlight at its driver-side window, and then awaited backup. According to Stoyell, Sanchez arrived a minute or two later. The pair of officers approached the vehicle and made contact with Madrid. Stoyell testified that while he conversed with Madrid at the driver-side window, Sanchez observed a rifle case in the back seat through the passenger-side window. At that point, Stoyell averred, he asked Madrid to exit the vehicle and handcuffed him.

Sanchez similarly testified that he arrived at the apartment complex a few minutes after being dispatched, and that by the time he arrived, Stoyell had already stopped Madrid. According to Sanchez's testimony, while Stoyell talked to Madrid on the driver side of the vehicle, Sanchez approached the passenger side. There, he observed a rifle case in the back seat and informed Stoyell about it, which prompted Stoyell to order Madrid to exit the vehicle.

Madrid described a different sequence of events. He testified that immediately after he was stopped, Stoyell approached the vehicle, ordered Madrid to exit, handcuffed him, forced him to remove his shirt, and told him to sit on a curb some distance away from the vehicle. According to Madrid, Stoyell questioned him outside of the vehicle for about twenty minutes before Sanchez arrived and noticed the rifle case in the back seat.

At the suppression hearing, Madrid's trial counsel, Cliff McIntyre, attempted to impeach Stoyell and Sanchez based on discrepancies between their testimony and a dispatch log. The log revealed that Stoyell was dispatched at 7:55 p.m. and Sanchez was dispatched one minute later. According to the log, Stoyell reported he was "on scene" two minutes later, at 7:57 p.m. But Sanchez did not report he was "on scene" until more than twenty minutes later, at 8:20 p.m.

On direct examination, Sanchez explained that he forgot to report "on-scene" when he initially arrived because he was concerned about officer safety. McIntyre questioned Sanchez about this explanation on cross-examination, asking him how his failure to report could be reconciled with the ability of every other officer, who presumably faced similar concerns, to nonetheless report "on-scene" in a timely fashion. During his cross-examination of Stoyell, McIntyre further probed into the discrepancy between Stoyell's claims regarding when Sanchez arrived and the timing indicated by the dispatch log. Stoyell also admitted, under McIntyre's questioning, that it was "possible" that he asked Madrid to exit his vehicle before Sanchez arrived. However, Stoyell remained adamant that he recalled Sanchez arriving and pointing

-3-

out the rifle case before Madrid was asked to leave his vehicle. Additionally, McIntyre cross-examined the police dispatcher, and elicited a concession from her that the dispatch log indicated that Sanchez did not arrive on the scene until 8:20 p.m.

McIntyre confronted both Stoyell and Sanchez with an inconsistency between their testimony and what they told McIntyre's investigator, LeRoy Sandoval, during an earlier interview. While confronting Stoyell with the inconsistency, McIntyre stated: "when you talked to my investigator, and I've got the tape here if I need to refresh your recollection, you told my investigator you weren't around the vehicle when the weapon was discovered. You were away from the vehicle talking to Mr. Madrid." However, McIntyre did not attempt to introduce the tape recording into the record, play the relevant excerpt to the court, introduce a copy of Sandoval's memorandum documenting the interview, or call Sandoval as a witness.

Some of McIntyre's impeachment tactics were less successful. He convinced the district court to listen to a dispatch tape, which he claimed included a conversation between Stoyell and Sanchez that proved Sanchez did not arrive on-scene immediately. However, when the district court listened to the tape, it heard no such conversation. Rather, it found that the tape contained evidence corroborating the testimony of Stoyell and Sanchez, specifically that after dispatch requested that Sanchez investigate a reported prowler, Stoyell overrode the request because Sanchez was otherwise occupied.

After the suppression hearing, the district court found that Stoyell and Sanchez were credible, and that Madrid was not. It found that the officers' version of events

was correct, and discounted the allegedly contrary evidence from the dispatch log. It found that Sanchez's explanation that he simply forgot to immediately report on-scene was corroborated by Stoyell overriding the request to have Sanchez respond to the reported prowler, "indicating that Officer Sanchez was indeed on scene with Lt. Stoyell." Accordingly, the district court denied the motion to suppress. We affirmed. Madrid, 713 F.3d at 1262.

After Madrid filed the amended § 2255 motion now at issue, his new counsel deposed both McIntyre and Sandoval and subpoenaed their records. Neither had possession of the tape and both had destroyed their records. A memorandum Sandoval drafted for McIntyre summarized an interview in which Stoyell provided a version of events that aligned with Madrid's testimony at the suppression hearing. The district court denied the § 2255 claim, Madrid's request for an evidentiary hearing, and a COA. Madrid timely appealed.

## II

Madrid may not appeal the denial of § 2255 relief without a COA. 28 U.S.C. § 2253(c)(1)(B). We will issue a COA "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To satisfy this standard, Madrid must demonstrate "that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." Slack v. McDaniel, 529 U.S. 473, 484 (2000) (quotation omitted).

## A

A petitioner claiming ineffective assistance of counsel must establish "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment" and that "the deficient performance prejudiced the defense." Strickland v. Washington, 466 U.S. 668, 687 (1984). To establish prejudice, a "defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. "The assessment of prejudice should proceed on the assumption that the decisionmaker is reasonably, conscientiously, and impartially applying the standards that govern the decision. It should not depend on the idiosyncracies of the particular decisionmaker . . . ." Id. at 695. "In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or jury." Id.

On appeal, Madrid argues that McIntyre rendered ineffective assistance because he failed to cross-examine Stoyell in greater detail or to introduce evidence of Sandoval's interview to impeach Stoyell and Sanchez. Assuming arguendo that McIntyre's inactions constituted deficient performance under the first prong of Strickland, we nevertheless conclude that Madrid was not prejudiced by McIntyre's inactions. McIntyre made strong arguments about the discrepancy between the officers' account of events and the timeline indicated by the dispatch log. He extensively cross-examined Stoyell, Sanchez, and the dispatcher. It is unclear what purpose additional cross-examination of Stoyell would have served, as McIntyre had

-6-

already elicited a concession from Stoyell that it was "possible" that Madrid was removed from the vehicle before Sanchez saw the rifle case. Moreover, McIntyre confronted both Stoyell and Sanchez with the discrepancy between their testimony and the account that Stoyell provided to Sandoval during the interview. We see no reason why listening to, or reading an account of, Sandoval's interview with Stoyell, rather than hearing McIntyre recount the interview, would have caused the court to reach a different decision.

After reading the parties' briefs, hearing testimony, and listening to the dispatch tape and log, the district court found the officers to be credible. It found that the dispatch tape corroborated officer testimony that Sanchez forgot to report on-scene immediately. Madrid has not shown "a reasonable probability that . . . the result of the proceeding would have been different" but for inaction by McIntyre. Id. at 694.

**B**

Madrid further argues that the district court erred by failing to hold an evidentiary hearing. We review a district court's denial of an evidentiary hearing for abuse of discretion. United States v. Harms, 371 F.3d 1208, 1210 (10th Cir. 2004). A district court need not hold an evidentiary hearing if "the case record conclusively shows the prisoner is entitled to no relief." United States v. Marr, 856 F.2d 1471, 1472 (10th Cir. 1988).

The district court granted several of Madrid's discovery requests during the § 2255 proceeding. Madrid had the opportunity to depose both McIntyre and

Sanchez. He subpoenaed them to obtain any records they had failed to turn over. That discovery revealed that neither had possession of the tape, and that both had destroyed their records. It is therefore unclear what evidence missing from the record could be elicited during an evidentiary hearing. Madrid specifically contends that a hearing is necessary to demonstrate the accuracy of the information that Sandoval gave to McIntyre, particularly in light of the government's suggestion that McIntyre may have been "bluffing" about the existence of the tape. But both McIntyre and Sandoval already testified in their depositions about the existence of the tape. And the accuracy of the information Sandoval gave to McIntyre can be verified through the memorandum Sandoval wrote for McIntyre, which is already in the record. Accordingly, the district court did not abuse its discretion by denying Madrid's motion for an evidentiary hearing because the existing record shows conclusively that Madrid is not entitled to relief. See Marr, 856 F.2d at 1472.

## III

For the foregoing reasons, we **DENY** a COA and **DISMISS** the appeal.

Entered for the Court

Carlos F. Lucero
Circuit Judge